Yes, your honor. Mr. Nathan, were you able to rejoin with us? Yes, I think so. Great. And Mr. Berry, you're with us? Yes. Yes, I am. Case number 21-1174 from the District of Northern Iowa, United States v. Johnathan Mitchell. Mr. Nathan? Thank you, your honors, and good morning. May it please the court, my name is Christopher Nathan. On my screen, you're in the dark, so I don't know if there's something you can do to get... Your honor, I... It doesn't matter that much, but... I apologize, your honor. I had tried to adjust the blinds behind me earlier. This is the best I could do. Okay. So, for Mr. Mitchell, may it please the court, Christopher Nathan. The first issue is whether courts may forcibly medicate a competent pretrial defendant who is not a threat to themselves or others in order to maintain their competence. No court has done this without incompetence as a condition precedent. CEL does not authorize forcible medication under such circumstances. A forcible medication order against a competent pretrial defendant who is not a danger to themselves or others... Counsel, there have been orders to maintain that have included a maintenance aspect. That's correct, your honor. In this kind of situation where you have someone who has long-term psychiatric problems and is only competent when he or she takes medications voluntarily, and you're ordering medications to last through trial, maintenance is essential. Yes, your honor. And the way I... Here we have an in and out of maintenance long situation in which, at the moment that we're talking about, he was in maintenance. He was doing it voluntarily, but he had persistently not. This line you're drawing makes no sense to me. Yes, your honor. And the distinction between the maintenance argument and what I'm suggesting lies in the margins. That is, the marginal liberty cost to forcibly medicating a competent defendant after medicating that same defendant when they were incompetent for the first time is less than the marginal cost to liberty when you forcibly medicate a competent defendant for the first time. That is, the competent defendant suffers a greater deprivation of liberty when they are being forcibly medicated for the first time compared to the competent defendant who is being forcibly medicated for the second time after being forcibly medicated for the first time. Under your regime, a defendant of this suffering from this mental condition can gain the system perpetually. No, your honor. The government can move for a proper cell order when the defendant is incompetent. In other contexts, district courts have required conditions precedent prior to issuing forcible medication orders. That is, they require a nexus between the timing of the issuance of the order and the issue or the problem. For example, whether it be forcibly medicating a dangerous defendant in order to extinguish the danger they pose to themselves or others, or whether it be mentally committing a defendant who suffers from a mental defect or disease, those courts require... If we reverse now, what is the likely sequence of events? Your honor, the likelihood is that Mr. Mitchell will proceed to trial. I believe the government and the district court mischaracterize the probability. And then on the EVA trial, when he chooses not to take his meds voluntarily for sufficient time to decompensate, then we'll have a cell order and we'll have another four months or whatever to recover. And we'll recycle the events, right? No, your honor. I disagree respectfully. How is the district court to prevent that? Your honor, the difference here is that the district court mischaracterized Mr. Mitchell's incentives. Defendants don't have an incentive... I'm characterizing them as many other courts have. And the defense admits that defendants have every incentive to go to trial. Defendants have every incentive to get out of jail. Counsel, can you answer my question? Assuming my prognosis turns out to be true, what can the district court do about it? Your honor, this is the first case of its kind. There is no precedent... Oh, come on. Come on. It is not. Your honor, no party submitted a case in which in the first instance a forcible medication order issued against a competent defendant. Yes, but we had two years when he wasn't competent. Let's step back for a minute. You have a defendant who is oscillating between competence and incompetence, fitness and unfit to stand trial, right? And he's oscillating because he quits taking his medications. And when the judge enters this particular order, he's competent, but he's only 75% compliant. And, you know, I mean, if you look at the findings, the findings are, well, he's 75% compliant. And when he takes his meds, like about 50% of the time, he starts to decompensate. When he gets down to some smaller percentage, and I can't remember what it was, he decompensates to the point where he's incompetent, unfit to stand trial. All right. And so, you know, yeah, this guy's got the model of compliance with his medications under the best of circumstances, even when he's quote unquote competent. And so this order looks a lot more to me like a maintenance order than it does anything else. And you're telling me that's not true. So why is my version or insight wrong? Why is this wrong? The answer, Your Honor, is that the self four factor test does not apply to these kinds of cases. And the reason the answer is we just got to wait till he decompensates. Then we can enter an order that says you have to be medicated and then we can enter a maintenance order. And a year from now, you can bring him to trial. Your Honor, every other district court has been able to bring defendants to trial without issuing a forcible medication order against a competent defendant. I acknowledge that the procedural history case here is lengthy, but this case is not unique. And I would point out that in April of 2020, the BOP opined that Mr. Mitchell was then incompetent. And the BOP did not opine that he was competent until September of 2020. That was a five month window during which it would have been proper to have requested a cell hearing and a cell order. As I was explaining, I believe that the reason that the cell factor test here does not apply is that the interests are balanced differently under these circumstances. The defendant who is incompetent enjoys a lesser deprivation of liberty compared to a competent defendant who was forcibly medicated. Mr. Nathan, the court has determined that he has gone through stretches of incompetency. So maybe I'm really just sort of getting on the coattails of Judge Erickson's question. But I'm going to push you a little bit on sort of the liberty interest of a competent person. And I think if you just have a freestanding competent person without, I think the district court had a couple of orders saying, you know, yes, he's incompetent, can't proceed, we have to restore him. Isn't that at least a factual difference that we need to take into consideration rather than just sort of the freestanding first time competent person that we are concerned might deteriorate for some reason that's presented to the court? No, Your Honor. I believe a categorical rule here is appropriate. I believe that competence is always a barrier to a forcible medication order. And that is because not only does the defendant here enjoy a greater liberty interest compared to an incompetent defendant, but the government, while still having an interest in prosecuting Mr. Mitchell, that interest is at less risk when the defendant is competent. So unlike Sell, where the defendant there had a lessened liberty interest and the government had a heightened interest, here those interests are flipped, where the defendant's interest is heightened and the government's interest is lessened. This case sort of seems to present a kind of like a, it doesn't seem to be sort of, you're arguing for sort of a snapshot that we're clear he's competent now, there's no question. And this sort of seems to be somebody who sort of goes in and out and it's almost even difficult maybe to determine the point at which he becomes competent or incompetent. Is that a challenge in your Brightline rule that it's not such a easy decision to come to and to determine? It's why we have all of these proceedings for the court to determine whether somebody's competent or not. Your Honor, I understand that the procedural posture of this case is frustrating and that it is difficult in such cases to reach decisions. However, in this case, there have been periods of time during which Mr. Mitchell was incompetent for an extended period and during that period, the government ought to have moved for a sell order. Let me present a different question and I'm sure you won't like this suggestion so I'll get your response to it. Sell, the opinion in sell emphasized that this competence for trial is only one reason that forced medication may be appropriate and indeed it's probably the last one that should be considered. Now the government gets all wrapped up because of the statutory structure in doing this prepare for trial scenario and ignores sell's command that the first thing you ought to do is make sure is to determine whether forced medication under Harper is appropriate. So it seems to me that even if your categorical rule is correct, we should order a remand in which there can be a determination for a Harper determination in which case all of this goes away. Yes, your honor. At 183 of sell, the opinion does talk about how before you even ask the question why is it medically appropriate to forcibly administer antipsychotic drugs, the court should first inquire into under Harper or any other basis short of forcible medication for trial competency purposes. That same question though posed by the court suggests that the court would be more concerned under these circumstances because when the question was posed under sell. No, I'm saying if it's remanded and there's a Harper determination, which it seems to me this fellow's long history of psychiatric problems would suggest is likely, then he's involuntarily medicated and you proceed to trial as long as he remains competent because he's being medicated and your problem goes away. Your honor, I would disagree that the record would support a finding of dangerousness under Harper. I would agree with your honor that if a Harper order properly issued that a byproduct of that might be the defendants restoration of competence. I did reserve five minutes of rebuttal. So if there aren't any more questions, I will reserve the remaining time. Thank you. Thank you. Mr. Berry. Morning, your honors. Please the court, counsel. The following facts are not in dispute here. The government has an important interest in trying the defendant in this Hobbs Act robbery case involving the murder of Kathy Stickley. Defendant hasn't been tried because he cycled in and out of competency since November of 2016. And it's significant that defendant has cycled out of competency both times he's been restored and returned to the district for trial. Defendant cycled out of competency both times because he refused to take his medication when he was returned to the district. It's clear and I believe undisputed that defendant will not remain, well, I take that back. Defendant will not remain competent for trial unless he takes his medication, whether voluntarily or involuntary. And the prescribed medications are medically appropriate. Now while the defendant was again found to be competent in October of 2020, absent a cell hearing, I'm sorry, absent the cell order, there's nothing to prevent him from stop taking his medication again as trial approaches, as trial begins, during trial. Counsel, I think the government is so wrapped up in its normal procedures, including the psychiatrists at Butler and Springfield, that all they work on is this competence procedure with the four months to the Attorney General and can you restore and then you restore and so forth. This chap killed a cab driver. Why doesn't the government start with Harper as the Supreme Court told you to? Understood, Your Honor. I'm trying to find, I addressed Harper in the district court in a footnote, and I'm sorry that I don't have that and I'm happy to submit just that later in a 28-day. If it's in the district court record, we can get it. Yeah, it's in a footnote, Your Honor, saying that we weren't contending the defendant was dangerous. We weren't seeking to medicate him under Harper. I'm saying why not? Well, certainly, Your Honor. Why would the psychiatrist, was it Dr. Grady? That's the most recent psychiatrist. Yeah, okay. I mean, I can't imagine he wouldn't say with this chap's history that out in the free world and without his meds, he's dangerous as all get out. None of the doctors did say that, Your Honor. Because they weren't asked to. Because the government moved right to this 47, whatever those numbers are in the statutes, because that's the progression that we march through these days. Despite the Supreme Court basically saying don't do it that way. Understood, and that's why I had the footnote in my briefing. With regard to the allegations in this case, while that would certainly make him dangerous if proven, of course, right now it's just an indictment and the defendant hasn't been charged on it. And so that's why the government didn't proceed with regard to Harper. Turning to the defendant's... I dare say if we reverse this order, that's where you'll go next. Well, I'm not sure, Your Honor. Again, that would depend on what the psychiatrist... Well, I don't know the rest of his criminal and psychiatric history, but certainly a strong indication that he's the sort of defendant that Harper focused on. Understood, Your Honor. I want to talk briefly about what the court's order actually says. First of all, while it's ordering involuntary medication, it's only after defendant has the opportunity to voluntarily take his medication. In other words, if defendant takes his medication voluntarily when he's returned to the district for trial, then the involuntary portion of the order won't kick in. The second thing is he will not be involuntarily medicated if he simply skips one or two doses. The order provides that involuntary medication will occur if the defendant's monthly compliance rate falls below 76%. So this is not an order where the district court has simply said, inject him. Inject him now. There is the opportunity to continue to comply voluntarily, and there is the 76%. Mr. Berry, what do you suggest should be the record that the district court would have to make or the government would have to present before you get to this point of this type of anticipatory order that you've described? What kind of line drawing, even if it's not, let's say it's not Mr. Nathan's line in the sand sort of categorical answer, how do courts approach this? What would be the guidance to determine when is enough that enough has progressed with this person's mental health issues that we can issue this sort of, well, he's competent, so we don't have to render him competent, but we want to make sure he is competent. How do we apply that? How would the courts apply that in the future? The courts would apply the cell factors. While cell did not address this particular set of facts, and these are an unusual set of facts, as Mr. Nathan noted, there doesn't seem to be a published case addressing these facts, but what the court will do in the future, in this case and in the future, is simply look at the four cell factors and decide under those factors, is involuntary medication warranted? And in this instance, under those factors, they were. In fact, three of the factors aren't disputed. The only one that's disputed is factor number three, which is that, I'm sorry, I'm looking through my notes. The third factor, which is that there are no less intrusive means of achieving the result of having the defendant competent for trial. And here, defendant's track record shows exactly that. So really, it is all about this. It probably, in most cases, all kind of come down to the third factor is what you're saying. Yeah. With this sort of issue, yeah, it does come down to the third factor. Of course, if the crime isn't serious, the first factor might come in, but directed to the court's question, it is the third factor. That's the one that the court needs to look at, and then it's a matter of factual determination. And the facts here indicate that the defendant needs the order in order to become competent through trial. And that's what the district court has concluded, and that's why the district court ordered what it ordered. In the dissent in cell, Justice Scalia noted his disagreement with the majority's interpretation of the collateral order exception providing jurisdiction for the appeal. So it was a different issue, and I'm acknowledging that. But what he wrote was, today's narrow holding will allow criminal defendants in petitioner's position to engage in opportunistic behavior. They can voluntarily take their medication until halfway through trial, then abruptly refuse and demand an interlocutory appeal from the order that the medication continue on a compulsory basis. That concern applies to this issue as well, setting aside the jurisdictional issue that Justice Scalia was writing about. Whether the defendant is intentionally manipulating the system, or is just incapable of voluntarily taking his medicine when he returns to the district, there is every reason to believe it will occur again, perhaps during trial. And so the district court, in analyzing cell, and analyzing the facts of this case, correctly concluded that involuntary medication is appropriate under certain circumstances. Those circumstances being, defendant refuses to voluntarily take his medication, and that refusal causes him to fall below 76% compliance. Unless there's further questions, I would submit to the court. Thank you. Very good. Mr. Nathan, we have some rebuttal time. Looks like almost three minutes. Mr. Nathan, can I ask you to respond to Mr. Berry's answer to my most recent question? That it really is about, at least in this case, it's about the third factor. And whether there are less intrusive ways to get at the end result of competency, if it's actually necessary. Why isn't that where the analysis should be? That's only the analysis, of course, under our argument, if your honors disagree with the defense proposed categorical rule. But I agree that in this case, if your honors were to address four factors, the fighting factor is the third factor, which is actually whether, essentially, forcible medication is necessary. And there's an important distinction between that analysis in the context of a competent defendant versus an incompetent defendant. Now, cell approaches the lesser alternative analysis from the point of view of an incompetent defendant. And that matters because an incompetent defendant, because they are incompetent to proceed to trial, is less likely to appreciate and respond to lesser alternatives, precisely because they lack that second layer of competency. A competent defendant, who is not only mentally competent, has their mental faculties, but also is competent for trial purposes, will have the requisite capacity to respond to and appreciate lesser alternatives. So what has not been tried here is the district court simply instructing Mr. Mitchell, Mr. Mitchell, while you may be competent now, I am advising you that if you cease to voluntarily take your meds, if you decompensate, if you become an incompetent, you are very likely going to be subjected to a forcible medication order. And I think that's part of the problem with the district court's analysis under the third factor, in that the district court fails to appreciate that competent defendants are going to be more responsive to those kinds of lesser alternatives. What if the district court had said just that? We've gone through this process a couple of times now, you've been less than compliant, and that's caused some problems. I'm going to let you know clearly, Mr. Competent person, defendant, that you have the choice. You can voluntarily take your medication, but if you deteriorate below the 76% compliance rate, you will be forcibly medicated. Would that be okay? If the court did that, and then Mr. Mitchell were to decompensate, become incompetent, and then the government renewed its motion for a cell order. So you say the whole process then has to start again. That's not enough in an order, the warning, is what you're telling me. No, assuming your honor disagrees with my categorical rule, if the court were to reject that argument, and if the court were simply to reverse under the third factor, then going forward from the defendant's failure to voluntarily comply with that admonishment, it is possible that the court could then issue a cell order. I think that's a possibility, yes, your honor. If there are any more questions, I would, of course, be happy to answer them. Otherwise, I would rest on the brief and the argument, and thank you so much, your honors. Well, thank you, counsel. The case has been very well briefed and argued. It's unusual and interesting and significant, obviously, to both sides, and we'll take it under advice.